1   TRACY L. WILKISON
    United States Attorney
2   SCOTT M. GARRINGER
    Assistant United States Attorney
3   Chief, Criminal Division
    ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
4   Assistant United States Attorney
    Deputy Chief, Major Frauds Section
5        1100 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-1259
7        Facsimile: (213) 894-0141
         E-mail:    alexander.schwab@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11           FOR THE CENTRAL DISTRICT OF CALIFORNIA

12   UNITED STATES OF AMERICA,          No. CR 22-175-DSF

13              Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                        DAVID JOSEPH BUNEVACZ
14              v.

15   DAVID JOSEPH BUNEVACZ,

16              Defendant.

17

18        1.   This constitutes the plea agreement between DAVID JOSEPH

19   BUNEVACZ ("defendant") and the United States Attorney's Office for

20   the Central District of California (the "USAO") in the case captioned

21   above.  This agreement is limited to the USAO and cannot bind any

22   other federal, state, local, or foreign prosecuting, enforcement,

23   administrative, or regulatory authority.

24                    DEFENDANT'S OBLIGATIONS

25        2.   Defendant agrees to:

26        a.   At the earliest opportunity requested by the USAO and

27   provided by the Court, appear and plead guilty to counts one and two

28   of the indictment in United States v. Bunevacz, CR No. 22-175-DSF,

which charge defendant with securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. 240.10b-5; and wire fraud, in violation of 18 U.S.C. § 1343.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at

1  usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial

2  Litigation Section at 300 North Los Angeles Street, Suite 7516, Los

3  Angeles, CA 90012.  Defendant agrees that defendant's ability to pay

4  criminal debt shall be assessed based on the completed Financial

5  Disclosure Statement and all required supporting documents, as well

6  as other relevant information relating to ability to pay.

7         j.    Authorize the USAO to obtain a credit report upon

8  returning a signed copy of this plea agreement.

9         k.    Consent to the USAO inspecting and copying all of

10  defendant's financial documents and financial information held by the

11  United States Probation and Pretrial Services Office.

12         l.    Agree that all court appearances, including his change

13  of plea hearing and sentencing hearing, may proceed by video-

14  teleconference ("VTC"), so long as such appearances are authorized by

15  Order of the Chief Judge 20-097 or another order, rule, or statute.

16  Defendant understands that, under the Constitution, the United States

17  Code, the Federal Rules of Criminal Procedure (including Rules 11,

18  32, and 43), he may have the right to be physically present at these

19  hearings.  Defendant understands that right and, after consulting

20  with counsel, voluntarily agrees to waive it and to proceed remotely.

21  Defense counsel also joins in this consent, agreement, and waiver.

22  Specifically, this agreement includes, but is not limited to, the

23  following:

24         i.    Defendant consents under Section 15002(b) of the

25  CARES Act to proceed with his change of plea hearing by VTC.

26         ii.    Defendant consents under Section 15002(b) of the

27  CARES Act to proceed with his sentencing hearing by VTC if personal

28  appearance is deemed by the Court to be unsafe due to COVID-19

1   concerns.   The parties agree to use best efforts to conduct the

2   sentencing hearing in person with the Court's approval.

3              iii. Defendant consents under 18 U.S.C. § 3148 and

4   Section 15002(b) of the CARES Act to proceed with any hearing

5   regarding alleged violations of the conditions of pretrial release by

6   VTC or telephone, if VTC is not reasonably available.

7        3.   Defendant further agrees:

8           a.   To forfeit all right, title, and interest in and to

9   any and all monies, properties, and/or assets of any kind, derived

10  from or acquired as a result of the illegal activity to which

11  defendant is pleading guilty.

12          b.   To the Court's entry of an order of forfeiture at or

13  before sentencing with respect to the Forfeitable Assets and to the

14  forfeiture of the assets.

15          c.   To take whatever steps are necessary to pass to the

16  United States clear title to the Forfeitable Assets, including,

17  without limitation, the execution of a consent decree of forfeiture

18  and the completing of any other legal documents required for the

19  transfer of title to the United States.

20          d.   Not to contest any administrative forfeiture

21  proceedings or civil judicial proceedings commenced against the

22  Forfeitable Assets.  If defendant submitted a claim and/or petition

23  for remission for all or part of the Forfeitable Assets on behalf of

24  himself or any other individual or entity, defendant shall and hereby

25  does withdraw any such claims or petitions, and further agrees to

26  waive any right he may have to seek remission or mitigation of the

27  forfeiture of the Forfeitable Assets.

28

1          e.    Not to assist any other individual in any effort
2     falsely to contest the forfeiture of the Forfeitable Assets.

3          f.    Not to claim that reasonable cause to seize the
4     Forfeitable Assets was lacking.

5          g.    To prevent the transfer, sale, destruction, or loss of
6     any and all assets described above to the extent defendant has the
7     ability to do so.

8          h.    To fill out and deliver to the USAO a completed
9     financial statement listing defendant's assets on a form provided by
10    the USAO.

11         i.    That forfeiture of Forfeitable Assets shall not be
12    counted toward satisfaction of any special assessment, fine,
13    restitution, costs, or other penalty the Court may impose.

14                        THE USAO'S OBLIGATIONS

15    4.    The USAO agrees to:

16         a.    Not contest facts agreed to in this agreement.

17         b.    Abide by all agreements regarding sentencing contained
18    in this agreement.

19         c.    At the time of sentencing, move to dismiss the
20    remaining counts of the indictment as against defendant.  Defendant
21    agrees, however, that at the time of sentencing the Court may
22    consider any dismissed charges in determining the applicable
23    Sentencing Guidelines range, the propriety and extent of any
24    departure from that range, and the sentence to be imposed.

25         d.    At the time of sentencing, provided that defendant
26    demonstrates an acceptance of responsibility for the offense up to
27    and including the time of sentencing, recommend a two-level reduction
28    in the applicable Sentencing Guidelines offense level, pursuant to

1  USSG § 3E1.1, and recommend and, if necessary, move for an additional
2  one-level reduction if available under that section.

3       e.   Recommend that defendant be sentenced to a term of
4  imprisonment no higher than the low end of the applicable Sentencing
5  Guidelines range, provided that the offense level used by the Court
6  to determine that range is 32 or higher and provided that the Court
7  does not depart downward in offense level or criminal history
8  category.  For purposes of this agreement, the low end of the
9  Sentencing Guidelines range is that defined by the Sentencing Table
10 in USSG Chapter 5, Part A.

11                       NATURE OF THE OFFENSE

12      5.   Defendant understands that, for defendant to be guilty of
13 the crime charged in count one of the indictment, that is, securities
14 fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R.
15 § 240.10b-5, the following must be true: (1) defendant willfully used
16 a device or scheme to defraud someone, made an untrue statement of a
17 material fact, failed to disclose a material fact that resulted in
18 making the defendant's statements misleading, or engaged in any act,
19 practice, or course of business that operates or would operate as a
20 fraud or deceit upon any person; (2) defendant's acts were
21 undertaken, statement was made, or failure to disclose was done in
22 connection with the purchase or sale of securities within the meaning
23 of 15 U.S.C. § 78c(a)(10); (3) defendant directly or indirectly used
24 wire communications in connection with these acts, making this
25 statement, or failing to disclose material facts; and (4) defendant
26 acted knowingly.

27      a.   "Willfully" means intentionally undertaking an act,
28 making an untrue statement, or failing to disclose for the wrongful

                                6

1 │ purpose of defrauding or deceiving someone.  Acting willfully does

2 │ not require that the defendant know that the conduct was unlawful.

3 │      b.   A fact is material if there is a substantial

4 │ likelihood that a reasonable investor would consider it important in

5 │ making the decision to purchase securities.

6 │      c.   It is not necessary that an untrue statement passed

7 │ through or over the wire communications so long as the wire

8 │ communications were used as a part of the transaction.

9 │      d.   It is not necessary that defendant made a profit or

10 │ that anyone actually suffered a loss.

11 │     6.   Defendant understands that, for defendant to be guilty of

12 │ the crime charged in count two of the indictment, that is, wire

13 │ fraud, in violation of 18 U.S.C. § 1343, the following must be true:

14 │ (1) defendant knowingly participated in, devised, or intended to

15 │ devise a scheme or plan to defraud, or a scheme or plan for obtaining

16 │ money or property by means of false or fraudulent pretenses,

17 │ representations, or promises, or omitted facts.  Deceitful statements

18 │ of half-truths may constitute false or fraudulent representations;

19 │ (2) the statements made or facts omitted as part of the scheme were

20 │ material; that is, they had a natural tendency to influence, or were

21 │ capable of influencing, a person to part with money or property;

22 │ (3) defendant acted with the intent to defraud, that is, the intent

23 │ to deceive and cheat; and (4) defendant used, or caused to be used,

24 │ an interstate or foreign wire.

25 │      a.   For a defendant to be guilty of wire fraud based on

26 │ omissions of material facts, he must have had a duty to disclose the

27 │ omitted fact arising out of a relationship of trust.  That duty can

28 │ arise either out of a formal fiduciary relationship, or an informal,

trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise.

## PENALTIES AND RESTITUTION

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5 is: twenty years' imprisonment; a three-year period of supervised release; a fine of $5 million or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343 is: twenty years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: forty years' imprisonment; a three-year period of supervised release; a fine of $5,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater

than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed or charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges.  The parties currently believe that the applicable amount of restitution is at least $28,409,112 but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  The Court will also order forfeiture of any property derived from or acquired as a result of the illegal activity to which defendant is pleading guilty or substitute assets up to the value of that property.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

1                              FACTUAL BASIS

2       15.  Defendant admits that defendant is, in fact, guilty of the

3  offenses to which defendant is agreeing to plead guilty.  Defendant

4  and the USAO agree to the statement of facts provided below and agree

5  that this statement of facts is sufficient to support pleas of guilty

6  to the charges described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 17 below but is

8  not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11      Beginning no later than in or about 2010, and continuing through

12 at least on or about April 5, 2022, in Los Angeles County, within the

13 Central District of California, and elsewhere, defendant, knowingly

14 and willfully, directly and indirectly, by the use of the means and

15 instrumentalities of interstate commerce and the mails, in connection

16 with the purchase and sale of securities, used and employed

17 manipulative and deceptive devices and contrivances by: (1) employing

18 a scheme to defraud; (2) making untrue statements of material facts

19 and omitting to state material facts necessary in order to make the

20 statements made, in light of the circumstances under which they were

21 made, not misleading; and (3) engaging in acts, practices, and

22 courses of business which operated and would operate as a fraud and

23 deceit upon purchasers and prospective purchasers of securities (the

24 "victim-investors"), by causing materially false and fraudulent

25 statements and material omissions to be made to the victim-investors

26 about defendant's use of victim-investors' investments.  Defendant

27 knowingly and with the intent to defraud devised and participated in

28 a scheme to defraud the victim-investors by means of false or

1    fraudulent pretenses, representations, or promises, and omitted
2    facts.

3         Defendant caused various business entities, which he represented
4    to be involved in the cannabis industry, to be registered as limited
5    liability companies or corporations with state secretaries of state
6    (collectively, the "BUNEVACZ Cannabis Companies").  The BUNEVACZ
7    Cannabis Companies included, for example, Holy Smokes Holdings LLC
8    and Caesarbrutus LLC, which were Nevada limited liability companies,
9    and CB Holding Group Corp., which was a Nevada corporation.

10        Defendant solicited funds from the victim-investors as
11   investments in the BUNEVACZ Cannabis Companies by offering to sell
12   the victim-investors securities issued by the BUNEVACZ Cannabis
13   Companies.  In doing so, defendant falsely and misleadingly
14   represented to victim-investors that he and a third party
15   ("Individual 1") had extensive experience in the cannabis industry
16   and that the BUNEVACZ Cannabis Companies were in the business of
17   selling vape pens containing cannabis products such as cannabidiol
18   (also known as CBD) and tetrahydrocannabinol (also known as THC).
19   Defendant also represented, promised, and maintained the pretense
20   that funds from victim-investors would be used to finance business
21   activities of the BUNEVACZ Cannabis Companies, such as the
22   acquisition of raw materials used to manufacture cannabis vape pens.
23   In reality, the BUNEVACZ Cannabis Companies were not successfully
24   engaged in the manufacture and distribution of cannabis vape pens,
25   and defendant used the majority of funds from victim-investors to
26   finance his own lavish lifestyle and that of his family.

27        For example, on February 5, 2019, victim-investor I.C.
28   transferred $800,000, by means of interstate wire transfers, to a

1    Bank of America account in the name of CB Holding Group Corp. in
2    connection with a senior secured promissory note -- which constituted
3    a security within the meaning of 15 U.S.C. § 78c(a)(10) -- that
4    defendant had negotiated with I.C.  Defendant caused a substantial
5    portion of the funds obtained from I.C. to be transferred, along with
6    other investor funds, to another bank account he controlled in the
7    name "Grenco Science, Inc."  Later in February 2019, defendant used
8    $100,000 from that account, almost all of which was the proceeds of
9    defendant's scheme to defraud, to pay down a balance on his American
10   Express credit card, which balance included two charges totaling more
11   than $65,000 for a luxury hotel in Cabo San Lucas.

12       To ensure victim-investors were not discouraged from investing
13   in the BUNEVACZ Cannabis Companies, defendant concealed from them the
14   material fact that he had been convicted in 2017 of Unlawful Sale of
15   a Security, in violation of California Corporation Code §§ 25110,
16   25540(A).  On October 28, 2018, defendant also sent victim-investor
17   S.S., by means of an email that traveled in foreign commerce from the
18   United States to Canada, a falsified version of a settlement
19   agreement reached with the victim of a prior fraud scheme, G.H.,
20   which made it appear that G.H. had agreed to pay defendant to resolve
21   the lawsuit between defendant and G.H., when, in fact, defendant had
22   agreed to pay G.H. to resolve the lawsuit.  The counterfeit
23   settlement agreement used the names and forged signatures of G.H. and
24   G.H.'s attorney, F.M.

25       To create the false appearance that the BUNEVACZ Cannabis
26   Companies were engaged in legitimate business activities, defendant
27   also caused the registration of additional business entities with
28   state agencies (the "Shell Companies") and caused bank accounts to be

opened in the names of the BUNEVACZ Cannabis Companies and the Shell Companies through which he funneled the proceeds of his fraudulent scheme (the "Funnel Accounts").  For many of the Shell Companies, defendant selected names intentionally similar or identical to those of real businesses, particularly cannabis businesses, such as Grenco Science and SaveurVape.  Defendant then used these same business names to generate fraudulent invoices, purchase orders, and bank statements, which he provided to the victim-investors to support his false claims that the BUNEVACZ Cannabis Companies were successfully engaged in manufacturing and distributing cannabis vape pens.  To conceal his own control of the Shell Companies and Funnel Accounts, defendant caused other individuals, including Individual 1, to be publicly listed as the corporate officers of the Shell Companies and the authorized signers on many of the Funnel Accounts.

In some instances, defendant refunded victim-investors some or all of their investments, which helped maintain the illusion that the BUNEVACZ Cannabis Companies were legitimate businesses and to discourage the victim-investors from taking legal action against him or the BUNEVACZ Cannabis Companies.

Operating through the BUNEVACZ Cannabis Companies, defendant raised between approximately $37,166,737 and $45,068,227 from more than ten victim-investors and caused losses of at least $28,409,112.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the

Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level | 7 | USSG § 2B1.1(a)(1) |
| Loss > $25 million | +22 | USSG § 2B1.1(b)(1)(L) |
| Victims ≥ 10 | +2 | USSG § 2B1.1(b)(2)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. By way of example, but not limitation, the government reserves the right to argue that defendant's offense and relevant conduct resulted in substantial financial hardship to five or more victims. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19. Defendant understands that by pleading guilty, defendant gives up the following rights:

      a. The right to persist in a plea of not guilty.

1          b.    The right to a speedy and public trial by jury.

2          c.    The right to be represented by counsel -- and if

3    necessary have the Court appoint counsel -- at trial.  Defendant

4    understands, however, that, defendant retains the right to be

5    represented by counsel -- and if necessary have the Court appoint

6    counsel -- at every other stage of the proceeding.

7          d.    The right to be presumed innocent and to have the

8    burden of proof placed on the government to prove defendant guilty

9    beyond a reasonable doubt.

10         e.    The right to confront and cross-examine witnesses

11   against defendant.

12         f.    The right to testify and to present evidence in

13   opposition to the charges, including the right to compel the

14   attendance of witnesses to testify.

15         g.    The right not to be compelled to testify, and, if

16   defendant chose not to testify or present evidence, to have that

17   choice not be used against defendant.

18         h.    Any and all rights to pursue any affirmative defenses,

19   Fourth Amendment or Fifth Amendment claims, and other pretrial

20   motions that have been filed or could be filed.

21                     WAIVER OF APPEAL OF CONVICTION

22       20.   Defendant understands that, with the exception of an appeal

23   based on a claim that defendant's guilty plea was involuntary, by

24   pleading guilty defendant is waiving and giving up any right to

25   appeal defendant's conviction on the offense to which defendant is

26   pleading guilty.  Defendant understands that this waiver includes,

27   but is not limited to, arguments that the statutes and implementing

28   regulations to which defendant is pleading guilty are

                                  16

1 unconstitutional, and any and all claims that the statement of facts

2 provided herein is insufficient to support defendant's plea of

3 guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4       21.   Defendant agrees that, provided the Court imposes a total

5 term of imprisonment on all counts of conviction of no more than 168

6 months, defendant gives up the right to appeal all of the following:

7 (a) the procedures and calculations used to determine and impose any

8 portion of the sentence; (b) the term of imprisonment imposed by the

9 Court; (c) the fine imposed by the Court, provided it is within the

10 statutory maximum; (d) to the extent permitted by law, the

11 constitutionality or legality of defendant's sentence, provided it is

12 within the statutory maximum; (e) the amount and terms of any

13 restitution order, provided it requires payment of no more than $40

14 million; (f) the term of probation or supervised release imposed by

15 the Court, provided it is within the statutory maximum; and (g) any

16 of the following conditions of probation or supervised release

17 imposed by the Court: the conditions set forth in Second Amended

18 General Order 20-04 of this Court; the drug testing conditions

19 mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

20 drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21       22.   The USAO agrees that, provided (a) all portions of the

22 sentence are at or below the statutory maximum specified above and

23 (b) the Court imposes a term of imprisonment of no less than 151

24 months, the USAO gives up its right to appeal any portion of the

25 sentence, with the exception that the USAO reserves the right to

26 appeal the amount of restitution ordered if that amount is less than

27 $37 million.

1 ## RESULT OF WITHDRAWAL OF GUILTY PLEA

2      23.  Defendant agrees that if, after entering guilty pleas

3 pursuant to this agreement, defendant seeks to withdraw and succeeds

4 in withdrawing defendant's guilty pleas on any basis other than a

5 claim and finding that entry into this plea agreement was

6 involuntary, then (a) the USAO will be relieved of all of its

7 obligations under this agreement; and (b) should the USAO choose to

8 pursue any charge that was either dismissed or not filed as a result

9 of this agreement, then (i) any applicable statute of limitations

10 will be tolled between the date of defendant's signing of this

11 agreement and the filing commencing any such action; and

12 (ii) defendant waives and gives up all defenses based on the statute

13 of limitations, any claim of pre-indictment delay, or any speedy

14 trial claim with respect to any such action, except to the extent

15 that such defenses existed as of the date of defendant's signing this

16 agreement.

17 ## RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

18      24.  Defendant agrees that if any count of conviction is

19 vacated, reversed, or set aside, the USAO may: (a) ask the Court to

20 resentence defendant on any remaining counts of conviction, with both

21 the USAO and defendant being released from any stipulations regarding

22 sentencing contained in this agreement, (b) ask the Court to void the

23 entire plea agreement and vacate defendant's guilty pleas on any

24 remaining counts of conviction, with both the USAO and defendant

25 being released from all their obligations under this agreement, or

26 (c) leave defendant's remaining convictions, sentence, and plea

27 agreement intact.  Defendant agrees that the choice among these three

28 options rests in the exclusive discretion of the USAO.

## EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

27.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

     a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

     b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the

1   extent that such defenses existed as of the date of defendant's

2   signing this agreement.

3            c.   Defendant agrees that: (i) any statements made by

4   defendant, under oath, at the guilty plea hearing (if such a hearing

5   occurred prior to the breach); (ii) the agreed to factual basis

6   statement in this agreement; and (iii) any evidence derived from such

7   statements, shall be admissible against defendant in any such action

8   against defendant, and defendant waives and gives up any claim under

9   the United States Constitution, any statute, Rule 410 of the Federal

10  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

11  Procedure, or any other federal rule, that the statements or any

12  evidence derived from the statements should be suppressed or are

13  inadmissible.

14            COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

15                          OFFICE NOT PARTIES

16      28.  Defendant understands that the Court and the United States

17  Probation and Pretrial Services Office are not parties to this

18  agreement and need not accept any of the USAO's sentencing

19  recommendations or the parties' agreements to facts or sentencing

20  factors.

21      29.  Defendant understands that both defendant and the USAO are

22  free to: (a) supplement the facts by supplying relevant information

23  to the United States Probation and Pretrial Services Office and the

24  Court, (b) correct any and all factual misstatements relating to the

25  Court's Sentencing Guidelines calculations and determination of

26  sentence, and (c) argue on appeal and collateral review that the

27  Court's Sentencing Guidelines calculations and the sentence it

28  chooses to impose are not error, although each party agrees to

1   maintain its view that the calculations in paragraph 14 are

2   consistent with the facts of this case.  While this paragraph permits

3   both the USAO and defendant to submit full and complete factual

4   information to the United States Probation and Pretrial Services

5   Office and the Court, even if that factual information may be viewed

6   as inconsistent with the facts agreed to in this agreement, this

7   paragraph does not affect defendant's and the USAO's obligations not

8   to contest the facts agreed to in this agreement.

9        30.   Defendant understands that even if the Court ignores any

10  sentencing recommendation, finds facts or reaches conclusions

11  different from those agreed to, and/or imposes any sentence up to the

12  maximum established by statute, defendant cannot, for that reason,

13  withdraw defendant's guilty plea, and defendant will remain bound to

14  fulfill all defendant's obligations under this agreement.  Defendant

15  understands that no one -- not the prosecutor, defendant's attorney,

16  or the Court -- can make a binding prediction or promise regarding

17  the sentence defendant will receive, except that it will be within

18  the statutory maximum.

19                    NO ADDITIONAL AGREEMENTS

20       31.   Defendant understands that, except as set forth herein,

21  there are no promises, understandings, or agreements between the USAO

22  and defendant or defendant's attorney, and that no additional

23  promise, understanding, or agreement may be entered into unless in a

24  writing signed by all parties or on the record in court.

25          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

26       32.   The parties agree that this agreement will be considered

27  //

28  //

                              21

1  part of the record of defendant's guilty plea hearing as if the

2  entire agreement had been read into the record of the proceeding.

3  AGREED AND ACCEPTED

4  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
5  CALIFORNIA

6  TRACY L. WILKISON
   United States Attorney

8  _____        June 30, 2022
                                            _____
   ALEXANDER B. SCHWAB                      Date
9  Assistant United States Attorney

10 _____        6/29/2022
                                            _____
11 DAVID JOSEPH BUNEVACZ                     Date
   Defendant

13 _____        6/29/2022
                                            _____
14 JIMMY THREATT                            Date
   Deputy Federal Public Defender
   Attorney for Defendant
15 DAVID JOSEPH BUNEVACZ

16

17                   CERTIFICATION OF DEFENDANT

18     I have read this agreement in its entirety.  I have had enough

19 time to review and consider this agreement, and I have carefully and

20 thoroughly discussed every part of it with my attorney.  I understand

21 the terms of this agreement, and I voluntarily agree to those terms.

22 I have discussed the evidence with my attorney, and my attorney has

23 advised me of my rights, of possible pretrial motions that might be

24 filed, of possible defenses that might be asserted either prior to or

25 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

26 of relevant Sentencing Guidelines provisions, and of the consequences

27 of entering into this agreement.  No promises, inducements, or

28 representations of any kind have been made to me other than those

                              22

1  contained in this agreement.  No one has threatened or forced me in

2  any way to enter into this agreement.  I am satisfied with the

3  representation of my attorney in this matter, and I am pleading

4  guilty because I am guilty of the charge and wish to take advantage

5  of the promises set forth in this agreement, and not for any other

6  reason.

7

8  _____        Date _6/29/2022_
   DAVID JOSEPH BUNEVACZ
9  Defendant

10              CERTIFICATION OF DEFENDANT'S ATTORNEY

11      I am DAVID JOSEPH BUNEVACZ's attorney.  I have carefully and

12  thoroughly discussed every part of this agreement with my client.

13  Further, I have fully advised my client of his rights, of possible

14  pretrial motions that might be filed, of possible defenses that might

15  be asserted either prior to or at trial, of the sentencing factors

16  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17  provisions, and of the consequences of entering into this agreement.

18  To my knowledge: no promises, inducements, or representations of any

19  kind have been made to my client other than those contained in this

20  agreement; no one has threatened or forced my client in any way to

21  enter into this agreement; my client's decision to enter into this

22  agreement is informed and voluntary; and the factual basis set forth

23  in this agreement is sufficient to support my client's entry of

24  guilty pleas pursuant to this agreement.

25  _____        _6/29/2022_

26  JIMMY THREATT                          Date
   Deputy Federal Public Defender
27  Attorney for Defendant
   DAVID JOSEPH BUNEVACZ

28

                              23