1  E. MARTIN ESTRADA
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
4  Assistant United States Attorney
   Deputy Chief, Major Frauds Section
5       1100 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-1259
7       Facsimile: (213) 894-0141
        E-mail:   alexander.schwab@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

10              UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR 22-175-DSF

13          Plaintiff,               GOVERNMENT'S OBJECTIONS TO
                                     PRESENTENCE INVESTIGATION REPORT
14          v.
                                     Hearing Date: November 21, 2022
15  DAVID JOSEPH BUNEVACZ,           Hearing Time: 8:30 a.m.
                                     Location:    Courtroom of the
16          Defendant.                            Hon. Dale S. Fischer

17

18       Plaintiff United States of America, by and through its counsel

19  of record, the United States Attorney for the Central District of

20  California and Assistant United States Attorney Alexander B. Schwab,

21  hereby files its objections to the presentence investigation report.

22       The government's objections are based on the attached memorandum

23  //

24  //

25

26

27

28

1  of points and authorities, the files and records in this case, and

2  such further evidence and argument as the Court may permit.

3  Dated: October 26, 2022            Respectfully submitted,

4                                     E. MARTIN ESTRADA
                                       United States Attorney
5
                                       SCOTT M. GARRINGER
6                                      Assistant United States Attorney
                                       Chief, Criminal Division
7

8                                               /s/
                                       _____
9                                      ALEXANDER B. SCHWAB
                                       Assistant United States Attorney
10
                                       Attorneys for Plaintiff
11                                     UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3       In a comprehensive and well-reasoned PSR, the United States

4   Probation Office concludes that defendant's guideline range is 121 to

5   151 months' imprisonment -- the product of an offense level of 32 and

6   a criminal history score of 0.  In particular, the PSR determined

7   that defendant's prior state securities felony conviction falls

8   within the scope of the instant offense and therefore gives rise to

9   no additional criminal history points.

10      The government agrees with the Probation Office's reasoning that

11  defendant's state crime should be considered part of the fraud scheme

12  for which he now faces sentencing.  To the extent necessary, however,

13  the government objects to the PSR on the grounds that defendant

14  should also receive a two-level enhancement for obstructing or

15  impeding the administration of justice under USSG § 3C1.1 and also

16  receive an upward departure to criminal history Category II.

17  ## II.  STATEMENT OF FACTS

18      ### A.   Defendant's Scheme

19      During defendant's change of plea hearing, he agreed under oath

20  to the following factual basis:

21          Beginning no later than in or about 2010, and
        continuing through at least on or about April 5, 2022, in
22      Los Angeles County, within the Central District of
        California, and elsewhere, defendant, knowingly and
23      willfully, directly and indirectly, by the use of the means
        and instrumentalities of interstate commerce and the mails,
24      in connection with the purchase and sale of securities,
        used and employed manipulative and deceptive devices and
25      contrivances by: (1) employing a scheme to defraud;
        (2) making untrue statements of material facts and omitting
26      to state material facts necessary in order to make the
        statements made, in light of the circumstances under which
27      they were made, not misleading; and (3) engaging in acts,
        practices, and courses of business which operated and would
28      operate as a fraud and deceit upon purchasers and

prospective purchasers of securities (the "victim-investors"), by causing materially false and fraudulent statements and material omissions to be made to the victim-investors about defendant's use of victim-investors' investments.  Defendant knowingly and with the intent to defraud devised and participated in a scheme to defraud the victim-investors by means of false or fraudulent pretenses, representations, or promises, and omitted facts.

Defendant caused various business entities, which he represented to be involved in the cannabis industry, to be registered as limited liability companies or corporations with state secretaries of state (collectively, the "BUNEVACZ Cannabis Companies").  The BUNEVACZ Cannabis Companies included, for example, Holy Smokes Holdings LLC and Caesarbrutus LLC, which were Nevada limited liability companies, and CB Holding Group Corp., which was a Nevada corporation.

Defendant solicited funds from the victim-investors as investments in the BUNEVACZ Cannabis Companies by offering to sell the victim-investors securities issued by the BUNEVACZ Cannabis Companies.  In doing so, defendant falsely and misleadingly represented to victim-investors that he and a third party ("Individual 1") had extensive experience in the cannabis industry and that the BUNEVACZ Cannabis Companies were in the business of selling vape pens containing cannabis products such as cannabidiol (also known as CBD) and tetrahydrocannabinol (also known as THC). Defendant also represented, promised, and maintained the pretense that funds from victim-investors would be used to finance business activities of the BUNEVACZ Cannabis Companies, such as the acquisition of raw materials used to manufacture cannabis vape pens.  In reality, the BUNEVACZ Cannabis Companies were not successfully engaged in the manufacture and distribution of cannabis vape pens, and defendant used the majority of funds from victim-investors to finance his own lavish lifestyle and that of his family.

For example, on February 5, 2019, victim-investor I.C. transferred $800,000, by means of interstate wire transfers, to a Bank of America account in the name of CB Holding Group Corp. in connection with a senior secured promissory note -- which constituted a security within the meaning of 15 U.S.C. § 78c(a)(10) -- that defendant had negotiated with I.C.  Defendant caused a substantial portion of the funds obtained from I.C. to be transferred, along with other investor funds, to another bank account he controlled in the name "Grenco Science, Inc."  Later in February 2019, defendant used $100,000 from that account, almost all of which was the proceeds of defendant's scheme to defraud, to pay down a balance on his American Express credit card, which balance included two charges totaling more than $65,000 for a luxury hotel in Cabo San Lucas.

2

To ensure victim-investors were not discouraged from investing in the BUNEVACZ Cannabis Companies, defendant concealed from them the material fact that he had been convicted in 2017 of Unlawful Sale of a Security, in violation of California Corporation Code §§ 25110, 25540(A).  On October 28, 2018, defendant also sent victim-investor S.S., by means of an email that traveled in foreign commerce from the United States to Canada, a falsified version of a settlement agreement reached with the victim of a prior fraud scheme, G.H., which made it appear that G.H. had agreed to pay defendant to resolve the lawsuit between defendant and G.H., when, in fact, defendant had agreed to pay G.H. to resolve the lawsuit. The counterfeit settlement agreement used the names and forged signatures of G.H. and G.H.'s attorney, F.M.

To create the false appearance that the BUNEVACZ Cannabis Companies were engaged in legitimate business activities, defendant also caused the registration of additional business entities with state agencies (the "Shell Companies") and caused bank accounts to be opened in the names of the BUNEVACZ Cannabis Companies and the Shell Companies through which he funneled the proceeds of his fraudulent scheme (the "Funnel Accounts").  For many of the Shell Companies, defendant selected names intentionally similar or identical to those of real businesses, particularly cannabis businesses, such as Grenco Science and SaveurVape.  Defendant then used these same business names to generate fraudulent invoices, purchase orders, and bank statements, which he provided to the victim-investors to support his false claims that the BUNEVACZ Cannabis Companies were successfully engaged in manufacturing and distributing cannabis vape pens.  To conceal his own control of the Shell Companies and Funnel Accounts, defendant caused other individuals, including Individual 1, to be publicly listed as the corporate officers of the Shell Companies and the authorized signers on many of the Funnel Accounts.

In some instances, defendant refunded victim-investors some or all of their investments, which helped maintain the illusion that the BUNEVACZ Cannabis Companies were legitimate businesses and to discourage the victim-investors from taking legal action against him or the BUNEVACZ Cannabis Companies.

Operating through the BUNEVACZ Cannabis Companies, defendant raised between approximately $37,166,737 and $45,068,227 from more than ten victim-investors and caused losses of at least $28,409,112.

(Plea Agreement ¶ 15, at 11-14).

3

**B.   Defendant's State Securities Convictions**

As noted above, defendant was convicted in Los Angeles Superior Court of felony securities offenses in 2017, having previously been charged in 2012.  (PSR ¶ 75, at 15).  While the sentence included three years of probation with a condition that he serve 360 days in jail, defendant was permitted to have the jail term permanently stayed if he paid $273,000 in restitution to two victims.  (Id.).  The the Probation Office concluded that defendant "used the proceeds from the instant offense to satisfy the restitution requirements in this [state] docket, so that he would not be subjected to a custodial sentence."  (Id. at 16).  In other words, defendant was rewarded with a lighter sentence by using other victims' funds to make Ponzi payments.

The PSR also documents defendant's failure to fully comply with the terms of his probationary sentence.  On May 3, 2019, he failed to appear in court at a hearing to consider a possible probation violation; two months later, he admitted to the violation but was allowed to continue probation "under the same terms and conditions." (Id.).

**III. ARGUMENT**

Defendant's state securities felony conviction resulted in a sentence in 2017 of three years' probation and a suspended sentence of 360 days in jail.  (PSR ¶ 75, at 15).  Ordinarily, this prior conviction would result in three criminal history points: one point for a sentence of less than sixty days, USSG § 4A1.1(c); and two additional points because defendant committed the instant offense while serving his probationary sentence, USSG § 4A1.1(d).  The PSR concludes, however, that "[t]his conviction is considered relevant

4

1  conduct to the instant offense under the parameters set forth in USSG

2  §1B1.3," and so, "[p]ursuant to USSG §4A1.2(a)(1) and Application

3  Note 1, this conviction is not considered a prior sentence and does

4  not garner criminal history points."  (PSR ¶ 75, at 16).

5       The government does not dispute this conclusion, which reflects

6  a faithful application of the Sentencing Guidelines.  It does,

7  however, raise two additional Sentencing Guidelines issues not

8  otherwise addressed in the PSR: First, to the extent defendant's

9  conduct surrounding his state securities conviction falls within the

10  scope of the instant offense, it also merits a two-level enhancement

11  for obstructing or impeding the administration of justice under USSG

12  § 3C1.1.  Second, even though defendant's prior felony conviction

13  does not give rise to criminal history points under § 4A1.1,

14  defendant's ongoing criminal conduct while under a state-imposed

15  sentence of probation offers a straightforward basis for an upward

16  departure under USSG § 4A1.3(a)(2) for an understated criminal

17  history.[1]

18       **A.   Defendant Should Receive a Two-Level Enhancement for
            Obstructing or Impeding the Administration of Justice**

19

20       Treating defendant's conduct surrounding his state securities

21  conviction as part of the instant offense means that he also merits

22

23       [1] As part of the plea agreement, the government has agreed to
"[r]ecommend that defendant be sentenced to a term of imprisonment no
24  higher than the low end of the applicable Sentencing Guidelines
range, provided that the offense level used by the Court to determine
25  that range is 32 or higher and provided that the Court does not
depart downward in offense level or criminal history category."
26  (Plea Agreement ¶ 4(e), at 6).  The government is not yet
recommending a particular sentence.  Yet, to be clear, so long as
27  defendant's total offense level is at least 32, the government will
recommend a sentence no greater than the low end of defendant's
28  guideline range even if the Court rejects the government's
calculation of defendant's sentencing guidelines.

an enhancement for his obstructive conduct in connection with his

state sentencing.  The Sentencing Guidelines provide:

> If (1) the defendant willfully obstructed or impeded, or
> attempted to obstruct or impede, the administration of
> justice with respect to the investigation, prosecution, or
> sentencing of the instant offense of conviction, and (2)
> the obstructive conduct related to (A) the defendant's
> offense of conviction and any relevant conduct; or (B) a
> closely related offense, increase the offense level by **2**
> levels.

USSG § 3C1.1.  As described in the PSR, defendant avoided a custodial

sentence in state court by making restitution in a Ponzi-like

fashion, using new criminal proceeds to repay earlier victims of his

scheme:

> It should be noted that during the time of Bunevacz's
> probation and the period that he was making restitution
> payments, he had no lawful form of income, aside from the
> income he was receiving from the instant offense.  Upon of
> review of his financial records, it appears that Bunevacz
> was making restitution payments by securing additional
> investments from new victims in the instant offense.
> Bunevacz thus used the proceeds from the instant offense to
> satisfy the restitution requirements in this docket, so
> that he would not be subjected to a custodial sentence.

(PSR ¶ 75, at 16).  Thus, to the extent defendant's state conviction

falls within the scope of the instant offense, then the sentencing

for his state offense was part of "the instant offense of

conviction," and defendant "willfully obstructed or impeded" the

sentencing by committing additional crimes to create the false

appearance of making bona fide restitution payments.  Cf. USSG

§ 3C1.1, comment., (n.4(F)) (including in its "non-exhaustive list of

examples" of covered conduct, "providing materially false information

to a judge").

Finally, while the Sentencing Guidelines prescribes that

"[c]onduct resulting in an enhancement under §3C1.1 . . . ordinarily

6

indicates that the defendant has not accepted responsibility for his criminal conduct," the government agrees this is one of those "extraordinary cases" in which adjustments under both § 3C1.1 and § 3E1.1 apply.  USSG § 3E1.1, comment. (n.4).  Because this is the unusual case where part of the underlying conduct includes state criminal proceedings and the obstructive conduct relates specifically to those proceedings, defendant's timely acknowledgement of guilt in his federal prosecution still warrants a three-level reduction so long as he continues to accept responsibility through the time of sentencing.

**B.   Defendant's Further Criminal Behavior While Serving a State Probationary Sentence Warrants an Upward Departure in His Criminal History Category**

Because defendant's state conviction constitutes a "prior sentence" for "conduct that is part of the instant offense," it does not count toward defendant's criminal history score.  See USSG § 4A1.2, comment. (n.1).  Nevertheless, defendant's criminal behavior while on probation qualifies for an upward departure in his criminal history score.  See USSG § 4A1.3(a)(1) ("If reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.").

The Sentencing Guidelines offers a non-exhaustive list of examples of circumstances warranting such an upward departure, including "[p]rior sentence(s) not used in computing the criminal history category."  USSG § 4A1.3(a)(2)(A).  To the extent the limitations on what qualifies as a "prior sentence" in the application notes to § 4A1.2 also applies to § 4A1.3, the government

1    agrees that the Court should not depart upward to reflect defendant's

2    conviction for his state securities offense.  See United States v.

3    Hunerlach, 258 F.3d 1282, 1286-87 (11th Cir. 2001); accord United

4    States v. Stephens, 373 F. App'x 457, 461 (5th Cir. 2010).  But the

5    text of the Sentencing Guidelines does not similarly limit an upward

6    departure for "commit[ing] the instant offense while under any

7    criminal justice sentence" where that sentence arose from "conduct

8    that is part of the instant offense."  Much like an upward departure

9    for "[p]rior similar misconduct established by a civil adjudication

10   or by a failure to comply with an administrative order" or misconduct

11   occurring when "the defendant was pending trial or sentencing on

12   another charge at the time of the instant offense," holding defendant

13   accountable for his criminal conduct while on probation acknowledges

14   defendant's risk of recidivism and lack of amenability to court-

15   imposed supervision.  As the Ninth Circuit has concluded, "The

16   criminal history factors were adopted to address the concerns of just

17   punishment and deterrence. . . . These factors reflect the frequency,

18   seriousness and recency of the prior criminal history, and were

19   selected because of their empirical relationship to the likelihood of

20   future criminal behavior."  United States v. McCrudden, 894 F.2d 338,

21   339 (9th Cir. 1990).

22       The Sentencing Guidelines provides that, when an upward

23   departure is merited for an underrepresented criminal history, "the

24   court shall determine the extent of a departure under this subsection

25   by using, as a reference, the criminal history category applicable to

26   defendants whose criminal history or likelihood to recidivate most

27   closely resembles that of the defendant's."  USSG § 4A1.3(a)(4)(A).

28   Setting aside defendant's state conviction itself as an extension of

8

1 his broader fraud scheme, his misdeeds while on state probation still
2 bespeak a greater risk of recidivism that a defendant's criminal
3 history score is intended to capture.

4      An upward departure is appropriate "where the defendant's record
5 is 'significantly more serious' than that of other defendants in the
6 same category." United States v. Hernandez-Vasquez, 884 F.2d 1314,
7 1315 (9th Cir. 1989).  Defendant was not only convicted of a state
8 securities offense but continued to commit securities fraud while
9 serving his sentence for that crime.  He has therefore demonstrated
10 that he is very different from the typical offender who falls in
11 Category I, who has a spotless or near-spotless record, and instead
12 displays many of the signs of recidivism typical of those in higher
13 criminal history categories.  Because defendant would ordinarily earn
14 two criminal history points under USSG § 4A1.1(d) for "commit[ing]
15 the instant offense while under any criminal justice sentence," the
16 Court should therefore find that defendant's criminal history
17 warrants an upward departure to Criminal History Category II, which
18 otherwise applies to defendants with two criminal history points.

19      Moreover, applying an upward departure to defendant's criminal
20 history is also appropriate in light of his conduct while previously
21 residing in the Philippines.  As detailed in both the complaint and
22 PSR, defendant "and his wife previously lived in the Philippines
23 while operating a 'high-end beauty clinic' called 'Beverly Hills 6750
24 Cosmetic Surgery and Skin Institute.'[2]  Press reports allege that

---

[2] Jo-Ann Q. Maglipon, "PEP SCOOP: David Bunevacz and Jessica Rodriguez Booted Out of Beverly Hills 6750," Philippine Entertainment Portal (Dec. 13, 2007), available at https://www.pep.ph/lifestyle/14733/pep-scoop-david-bunevacz-and-jessica-rodriguez-booted-out-of-beverly-hills-6750.

[defendant] and his wife left the Philippines for the United States 'amidst allegations they scammed their business partners of huge amounts of money' in connection with 'an elite cosmetic surgery clinic catering to Manila's high society.'[3]  According to the report, '[i]nsiders at the clinic say the couple has an insatiable appetite for the good life, and suspicions from their business partners grew after several high profile purchases were made known to the public, including a new BMW X5,' which defendant gave his wife as an 'anniversary gift.'"  (See PSR ¶ 81, at 16-17; Complaint ¶ 8, at 3-4).

## IV.   CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court conclude that defendant's offense conduct warrants a two-level enhancement for obstruction of justice and an upward departure to Criminal History Category II.  The result would be a guideline range of 168 to 210 months' imprisonment.

---

[3] Vincent Anthony Garcia, "Scamming Celeb Couple," Gulf News (Dec. 23, 2007), available at https://gulfnews.com/general/scamming-celeb-couple-1.219108.